VIEW, The A. J.  See Case No. 118.

VIGOL (UNITED STATES v.).  See Case No. 16,621.

VIGUS, The LILIAN M.  See Case No. 8,-346.

---

## Case No. 16,941.

### In re VILA.

[5 Law Rep. 17.]

Circuit Court, D. Massachusetts. March 19, 1842.

BANKRUPTCY — SALE OF ASSETS — AUTHORITY OF COURT—NOTICE TO CREDITORS—PROCEDURE.

1. The district court of the United States has authority to order the sale of the whole or any part of the property of a bankrupt, by his consent, even before the declaration of bankruptcy.

2. The creditors must have due notice of any application for a sale, so that they may appear and show cause against such sale, or for a postponement thereof.

3. Such sale, if directed by the court, should be made by a commissioner. The time and place of the sale should be fixed by the court, and duly advertised, and the conveyance should be made by the bankrupt to the purchaser in the form prescribed by the commissioner.

A petition was filed in the district court by James Vila, setting forth that on March 11th he filed in this court a petition to be declared a bankrupt; that at the time of his bankruptcy he was seized and possessed of certain real estate and personal property, which was specifically set forth; that it would be for the benefit of the said estate, and of all parties having interest therein, that the same should be sold, transferred and assigned, inasmuch as it would be necessary to expend large sums of money in order to preserve the same from deterioration and waste, and if the time of the sale was postponed until an assignee of said estate should be appointed, the same could not be sold except at great loss and disadvantage. Wherefore the petitioner prayed the court to pass an order for 'hat purpose, according to the provisions of the act of congress. No opposition was made to the petition. At the hearing, the district judge made an order, that the question, whether upon the facts set forth in said petition, the said James Vila, or any other person, might be empowered to sell and convey the property mentioned in said petition, or any part thereof; and if so, in what manner the same should be done, be adjourned into the circuit court, to be there heard and determined. [Case unreported.]

Francis C. Loring, for petitioner.

STORY, Circuit Justice. I have no doubt whatsoever of the authority of the district court to order the sale of the whole, or any part of this property, in the present stage of the proceedings in bankruptcy, in its discretion, if it will, in the judgment of the court, be beneficial to the creditors, and is assented to by the bankrupt. The authority results from the general jurisdiction of the court as a court of equity sitting in bankruptcy; and it becomes the duty of the court, from the moment that the property is submitted to its custody, under the proceedings in bankruptcy, to take due order for its preservation, and to turn it to the best account for the creditors. No one could well doubt this, if the property were perishable; and quite as much injury might result, if it were, in the interval, subject to great depreciation from other causes. I say, that the sale may be made with the consent of the bankrupt; for. as he has not as yet been decreed to be a bankrupt, it would seem unfit to exercise the authority without such consent, until the property is devested from him under the decree declaring him a bankrupt. It is necessary, however, that the creditors should have due notice of this application, before the sale takes place, so that they may appear and shew cause in the district court against any sale, or for a postponement thereof; and doubtless the best mode of giving notice to the creditors would be by advertisement in some public newspapers, a sufficient time before the sale to enable them to act, if they see fit, in the premises.

The sale, if directed by the court, should, as I think, be made by a commissioner appointed by the court, and not by the bankrupt. The commissioner would naturally seek the aid and service of the bankrupt and of the creditors to assist his own judgment, not indeed as a matter of strict duty, but of convenience and propriety. The time and place of sale should be fixed by the court and duly advertised; and the conveyance should be made by the bankrupt to the purchaser or purchasers, in the form prescribed by the commissioner, and with his sanction and approbation as a party thereto, with the proper recitals. I shall direct an order to be sent accordingly to the district court, certifying this opinion.

The following order was accordingly sent: Circuit Court of the United States, Massachusetts District. In Bankruptcy. March 19, 1842. In the Matter of James Vila, Petitioner. Upon the question certified and ordered to be adjourned into this court by the district court, to be heard and determined, it is hereby ordered and decreed to be certified to the district court, as follows: That it is competent for the district court, sitting as a court of equity in bankruptcy, to authorize and decree a sale to be made of the property mentioned in the said petition, or any part thereof. as the district court may, in its discretion, deem for the interest of the estate. The sale is to be made at public auction, at such time and place as the said court may direct, by a commissioner to be appointed by the court for that purpose. That the creditors, who have proved their debts, and all other creditors. who shall prove their debts, are to have notice, by a publication in some newspaper or newspapers designated by the court, of the time and place of such intended sale, that they may appear and show cause, why the sale should not be made, and apply to the court for a stay or suspension thereof. That the deed to be executed to the purchaser shall

be executed by the said Vila in due form of law, and shall be in such terms and with such covenants as the commissioner shall advise and direct; and that the commissioner shall also be a party to the said deed and execute the same, and that the same shall contain a recital, that the sale has been made by him, under the authority of the court, and has been approved by him. and that the proceedings under the sale have been in all respects conformable to the decretal order of the court.

VILAS (AKERLY v.). See Case No. 119.

## VILLAGE OF.

[Note. Cases cited under this title will be found arranged in alphabetical order under the names of the villages.]

VILLATO (UNITED STATES v.). See Case No. 16,622.

## Case No. 16,942.

### The VILLE DE PARIS.

[3 Ben. 276.] [1]

District Court, S. D. New York. June, 1876.

BILL OF LADING — DELIVERY OF CARGO — PLEADING—EVIDENCE.

1. A case of goods, being one of three specified in a bill of lading, was put over the ship's side, upon the wharf, and placed on a truck belonging to the ship, and wheeled by an employee of the ship up the wharf to the door of a little house, in which the custom-house inspectors, who had charge of the discharging of the vessel, transacted their business, and there one of the inspectors marked it "P. S." (which indicated that it was to be taken to a public store,) and it was then wheeled farther up the wharf, but what was done with it after that did not appear, although it was in the course of business for it to be deposited in a part of the wharf designated for such goods as were to go to a public store, but it could not be found when search was made for it half an hour after, the wharf being exclusively occupied by the owners of the ship, and being enclosed on the inner end by a fence, access through which was had by gates. On a libel being filed against the ship for the non-delivery of the case according to the bill of lading: Held, that the facts did not constitute any delivery of the case on the wharf, or to the custom-house authorities, so as to exonerate the vessel from her liability under the bill of lading.

[Cited in Unnevehr v. The Hindoo, 1 Fed. 630.]

2. Where a libel was filed by the consignee named in a bill of lading, to recover damages for non-delivery of the goods, and the libel contained no averment that the libellant was the owner of the goods, and the answer set up that the goods were delivered, but did not allege that the libellant was not the owner of them, or contain any exception to the libel for not averring ownership in the libellant: Held, that, on these pleadings, the point that the libellant was not the real owner of the goods, must be taken as having been waived.

3. The fact that the libellant, on October 24th, 1867, on the entry of the goods at the custom-

house, made oath that the goods then belonged to a house in Switzerland, is not evidence to show that the libellant did not own the goods when the libel was filed, on December 27th, 1867.

In admiralty.

Henry H. Anderson and Thatcher M. Adams, for libellants.

Charles Donohue and Walter L. Livingston, for claimants.

BLATCHFORD, District Judge. This is a libel filed to recover the sum of $4,500, as the value of a case of silks carried by the steamship Ville de Paris from Havre to New York, under a bill of lading wherein the libellants, Adolph Rusch and others, were named as the consignees of the case. The libel is founded on the non-delivery of the case under the bill of lading. It does not aver that the libellants were or are the owners of the goods. The only defence set up in the answer is, that the case was delivered to the libellants at New York. There is, in the answer, an allegation, that the libellants are not entitled to recover anything from the vessel, but there is no averment in it that the libellants were not the owners of the merchandise, nor any exception in it to the libel, for want of an averment in the libel that the libellants are or were such owners. On the trial, the claimants took the point that they had a right to rebut the prima facie title which the libellants showed as consignees under the bill of lading (Lawrence v. Minturn, 17 How. [58 U. S.] 100, 107), by showing that the libellants were not the owners of the merchandise in question, and therefore not entitled to bring the suit. I think, however, that, on the above state of the pleadings, the point must be regarded as having been waived by the claimants. But, even if it were open to them, they gave no proof of non-ownership by the libellants, when the suit was brought. The only testimony they introduced bearing on the subject, was the oath, made by one of the libellants, on the entry of the goods at the custom-house in New York, on the 24th of October, 1867, after the vessel arrived there, that the goods then belonged to a house in Switzerland. The libel was sworn to on the 27th of December, 1867, and filed on the same day, and no evidence was offered by the claimants to show that the libellants did not then own the goods.

The case in question was one numbered 170. The bill of lading covered two other cases, numbered 169 and 171. The libellants entered all three of the cases, and paid the duties on them, and obtained from the custom-house a permit, authorizing the delivery to them of the cases numbered 169 and 171, and requiring the case numbered 170 to be sent to the public store for appraisement. That permit was addressed to the inspector of the port, and was delivered to two customs inspectors who had charge of the discharging of the vessel, and transacted their business in a small movable house on the wharf at which the vessel was lying. The

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]